210-0923 Joseph Mattallo v. Village of O'Hara May I please report, I'm Anthony Archer and it's my honor to be here before you today on behalf of Mr. Joseph Mattallo, a disabled police officer who was injured on September 13, 2006, while acting in his capacity as a HUBEC agent involved in a SWAT operation. He was injured by a suspected drug home. Mr. Mattallo, upon entering the premises, there was some issue about whether the owner of the surprise had been lost. One of the occupants attempted to exit the home. He was a large fellow, he was actually wearing a football outfit. He and Mr. Mattallo struggled. During the struggle, Mr. Mattallo served in prison with his left arm scanned, so he was not only struggling with this person being in custody, but also to make sure that his weapon was in his own control for reasons that are obvious. During the course of this struggle, Mr. Mattallo's knee impacted on the entire surface of the entry area of this home. He sensed a pop, and after gaining control of this individual, he was not able to walk. He was not able to walk from the scene. He was then taken by his fellow police officers to a fire station, where he was then transported to Good Samaritan Hospital. Counsel, you're proceeding on the theory that the claimant obviously has a pre-existing condition, and his work-related encounter aggravated or accelerated the pre-existing condition. Is that the argument? That is absolutely correct, Your Honor. Nobody's denying a motorcycle accident or anything like that, right? No, Your Honor, we are not. He's clearly had a prior injury. It was likely a PCL error or injury to some extent from September of 2005. A little more than a year later is when this injury occurs. It's undisputed that Mr. Mattallo was working full-time, in fact, for significant overtime hours in his capacity to do, maybe, a strenuous job from January 17th of 2006, often including the date of this accident. The medical in the case is undisputed that Mr. Mattallo sustained bilateral medial and lateral meniscal tears in his right knee, which were then superimposed upon whatever pre-existing issue had brought on him in the PCL. The injury was initially accepted as a complaint. Mr. Mattallo was going through physical therapy, had a surgery, and after the surgery, the first surgery that was done by Dr. Schultz, the treater, was a bilateral meniscectomy. So when we're talking about a meniscectomy, we're talking about a cathodectomy or a tonsillectomy, removal of meniscal tissue. Do I understand your argument that you're arguing that we should reverse because Dr. Schultz's opinions are more reliable than Dr. Bach's? Well, that is the crux of this, Judge, but I think... The crux of it is, is that true or false? That is true to the extent that what I believe, if you analyze the evidence here, Dr. Bach actually has no opinion on the crux of the case. The crux of the case is, why is Mr. Mattallo, who sits in this courtroom today, able to work from January of 2006 up to and including September 13, 2006, not as a desk jockey, but as an undercover human agent performing SWAT activities, and then unable to work after that date? Let's see what Dr. Bach, surely it must come from him as the respondent's IME. What's the answer to that pertinent question, the crux of this case? Doctor, why is it, this is questioning my respondent's counsel, page 43 of the transcript, which I believe would be page 609, C609. Doctor, in your opinion, why is it that he can't go to work after the September 13, 2006 incident? Related to the PCL? Or don't you know? Answer, I don't know. That is the answer to the crux of this case coming from Dr. Bach. But didn't Dr. Bach also state that he related the instability after the work-related accident to the meniscal tears? Doctor, absolutely. As opposed to the PCL. Absolutely. In other words. The meniscal tears played a role in the resulting, yes. It was Bach's opinion. Well, he didn't say it played a role. He said that that's what caused the instability after the work-related accident. That is correct. And also, it was his testimony that the PCL tear, in fact, both doctors agreed that the PCL was injured in the motorcycle accident. That is correct. Your argument is that the second accident, the work-related accident, contributed to the overall instability, and that is what required the PCL surgery. That is correct. That was a call factor in bringing about the PCL surgery. Your doctor, Doctor, is it Chudik? Chudik. He said he couldn't really say whether the surgery would have occurred regardless of the second accident or not. That would be speculative. You can't unbring the valve and you un-injure Mr. McDonnell's knee. Dr. Chudik was treating a knee that had two injuries going on. One was to the menisci, which are the donut-like pieces of tissue that sit on top of the tibia. And then the femur comes into those, almost like two ball and sockets. The menisci, these donuts, which are the sockets, were removed, or significant portions of those tissues were removed. The menisci and the PCL worked together to stabilize the knee joint. So what Dr. Chudik said was basically this. Yes, the PCL may have been injured from before, but when you injure the sockets, the knee joint is more unstable than it would have been if the sockets were healthy. And after that point, because you're removing the sockets or parts of the sockets, you don't have the same stability. And so the problem with the PCL that existed before is now more manifest, because the PCL is required to do more to stabilize the knee joint. And so what he said was, first of all, the PCL may not have even needed a surgery from before. His plan, in fact what he did in this case, was to do the meniscal cares first and then put him into physical therapy to see if therapy by itself would restore enough PCL function and surrounding knee function to put him back to work. That was unsuccessful. And then, and only then, was the PCL reconstructed. And I think that's where the proof is in the pudding. If the PCL has been reconstructed as it was in July of 2007, why is it that Mr. Vitale can't work? Because there is no opinion saying that the man can work. You'd often have to be at a disability pension if you speak. So why is it that this man can't work if the PCL has been reconstructed and, therefore, probably better than it was before he was injured on September 13, 2006? Is there any way to conclude that the meniscal cares played no role and that the PCL was not worsened in the September 13, 2006 injury? It literally defies logic and reason to get to that result. Counsel, your argument has some intuitive appeal. How do you respond, though, to the argument that the law is well settled, that the commission, it's the commission's responsibility to resolve the conflicting medical evidence and to decide the weight and sufficiency of the evidence? So how do we reverse them without doing violence to that well-settled principle? Well, it's not violence to that principle, Your Honor, that this court is not a rubber stamp for what the commission does. When Dr. Bach literally says, I don't know, to the central issue in this case, then you have really no evidence supporting what the commission has concluded and no evidence supporting the arguments of the respondent versus Dr. Chuck, who's explained in detail how this all fits together. So you're saying since on this issue Dr. Bach did not specifically opine, there's really no evidence in the record to support that conclusion. Is that what you're saying? That's absolutely correct. You're saying it's not conflicting, there's no evidence there on that issue. That is correct. There is no evidence on that particular point. Not only that, but Dr. Bach's opinions, there's a certain semantic aspect to this. There's a fallacy that the respondent asks us to indulge in, which is that MMI equals totally healed. So when Dr. Bach really says the municipal tears in isolation were a maximum medical improvement by the time he evaluated Mr. Towell, but he's pretending that these are municipal tears in some other knee, not the one that also has a PCL issue going on, because the two things work together. You can't isolate them. Their theory would work if it was municipal tears in the left knee and a PCL in the right, but these are working together. The MMI does not mean totally healed. It means maximum medical improvement. That is a matter of law. Maximum medical improvement in its definition is a matter of law. Dr. Chuck, who's the only one who knows, who was in there to do the surgery, says, I removed municipal tissue, and it's not been replaced by anything. It was a meniscectomy, just like an appendectomy or a tonsillectomy. It's gone. These sockets have been permanently damaged. And that's been determined to be work-related, and there's no issue about that? No issue whatsoever. Your issue here is responsibility for the time off during the PCL reconstruction and after the PCL reconstruction surgery and the cost of the medical for that. That's correct. And didn't Dr. Bach specifically opine, though, that the work-related accident did not aggravate or accelerate in any way the PCL condition? As for the PCL itself, I believe that was his opinion. But as to the knee instability, considering all of the parts of the whole, there's no opinion, and that's why when the Respondents' Council, thinking that it was important to get that opinion on the record, asks Dr. Bach to explain this theory, Dr. Bach's answer is, I don't know, because there is no plausible theory to put that all together. You could play semantic games and talk about MMI, but MMI does not mean totally healed. Well, what did Dr. Chetik say? Dr. Chetik explained that once you injure the menisci, Your Honor, the menisci, those sockets, are no longer in the ground as they would have been before. He removed some of that tissue to basically smooth them out as best he could. And returned him to work? No, he did not return him to work. Nobody has returned him to work, nor did Dr. Bach. So the arbitrator is wrong when he says that Dr. Chetik said that he had recovered sufficiently enough to return to work? That is absolutely wrong. That was never said. That was said by the arbitrator. Well, the arbitrator is absolutely incorrect. I will report to page 39 of Dr. Chetik's deposition, where Dr. Chetik states that not only did he not return him to work, but Mr. McCollum never reached maximum medical improvement in relation to the meniscal pathology. Why? Because Dr. Chetik goes on to say, I'm treating him for the whole knee. And I think the meniscal pathology, they're not a separate issue. The meniscus and the PCL is not a separate issue when it comes to functional stability of the knee. You can't separate those. I mean, literally, there's no more to treat specifically to the meniscus. But unfortunately, the further injuries to the meniscus will make the PCL or ACL or any other type of ligament insufficiency worse for functioning for the knee. That's the crux of the case right there. That's the answer that Dr. Chetik has in support of Petitioner's case. And that is what Dr. Potts simply cannot resist. I mean, he's only asked to by the attorney for the respondent. He doesn't have a counterargument to that. The other argument here that we see is the plain hurt defense. The respondent in their brief talks about Mr. McCullough as of September 2006, before the injury was plain hurt. I can't fathom if there's any functional distinction between plain hurt and pre-existing conditions. Pre-existing conditions and aggravations thereof have been comparable under our law for over 100 years. There is no functional difference between plain hurt and saying that the man has a pre-existing condition. What they can't explain is why he was plain and why he can't play, indisputably can't play, after September 13, 2006. There is no evidence in this record, no opinion saying that this man lacked credibility or that he was able to work after this injury in Denver passed. So, with this case being what it is, I would expect, I've been working for four years on this case and I haven't heard an answer to these questions. Well, you couldn't convince commissioners Sherman and Dolphin. Unfortunately, you are correct. But then again, Your Honor, there's no way of knowing what reasoning they used to reject the argument because there was nothing to their opinion. What, nothing? Well, they adopted the arbitrator's opinion, but there was no additional reasoning other than that. And by the way, the arbitrator never uses the words municipal, never is it addressed that this guy had a role in the stability of the injury. You'll have time for rebuttal. Thank you, Your Honor. Counsel, please. May it please the Court, my name is Andy Spirogo. I represent the Bills of Lombard in this case. We know, according to the SISRO case, that it is not the role of the reviewing court to review the evidence, to judge the credibility of witnesses, to resolve conflicting medical evidence. That is precisely what the applicant is asking you to do. Well, that's a good question. That's why we asked him the question. I mean, SISRO does stand for those propositions. However, he's raising a more subtle point, and you've heard the argument. He's saying that when you weigh the opinions of Chudnik or Chudik and Dr. Bach, Bach never really opined specifically on the municipal issue. Dr. Bach does give very specific opinions. Dr. Bach opines, and you'll see it in the record very clearly. It's one thing to read one question out of a deposition that took over two hours. Dr. Bach states with definitive, a definitive manner, in accordance with medical certainty, the only injuries that occurred on September 13, 2006 were the meniscus injuries. He states with certainty that the PCL injury preexisted, that the PCL injury not only preexisted, but was symptomatic. We hear about quiet conditions versus symptomatic conditions. Dr. Bach unequivocally states that the PCL injury was not further injured on September 13, 2006. We talk about a theory in the deposition that meniscus served as secondary stabilizers. Dr. Bach acknowledges that that is certainly a theory. He never adopts the position that the fact that the municipal tissue was removed caused this PCL to be further unstable. You say he didn't adopt it. Did he reject it? Yes. He rejects it, Your Honor, in the form of the meniscus was not further injured in that. Well, there's something to be said on your opposing counsel's argument about, you know, he parsed his testimony between meniscal damage and PCL damage, true? Yes, he did. He never really addressed what the combined effect of those two injuries caused to the total need. In other words, that's where the petitioner wants to guide the issue. Bach never really addressed that. Yes, he does. Okay, tell us that. Please look at his testimony. He says the meniscus, the tears, they were healed. They had nothing to do with this PCL. The tears, after the surgery. Okay, and this is where this whole case kind of boils down. He says they had nothing to do with the PCL. That's right. But what about the total instability of the knee? He states that as well. He states that it is indirect, Your Honor. Dr. Bach states that the meniscal tears would be an MMI by a certain date, March 2007. Dr. Chatterjee agrees with that theory, April 2007. Dr. Chatterjee, when you look at his testimony, he goes back and forth. He says, and I think one of you acknowledged it, he says, I can't state with any degree of certainty whether or not that PCL surgery would be needed, absent this meniscal injury. He also states, he equivocates, he goes back and forth. He states, I can't state with any degree of certainty that the amount of meniscal tissue removed, because that's the question. You know, with meniscal, with menisectomies, there could be a minimum amount of tissue removed. There could be a lot of tissue removed. It's never been addressed in any of these cases. Dr. Chatterjee never says there was a level of meniscal tissue removed such that it would be a certain, to a reasonable degree of medical certainty, that would lead the PCL to be unstable. He never says that. He goes back and forth. We have conflicting medical testimony here that Mr. Arvarez has asked you to take aside. The question here is, was there a basis for the commission to find that the PCL injury was not related to the work-related incident, September 13, 2006? Was there a basis for the commission to find that the resulting surgery, resulting therapy, was not related to the work-related condition? And if you look, when you look at this record, the basis for the commission's decision is overwhelming in this case. Not only is there some basis, which I think is what CISPRO talks about here as what's needed. It's overwhelming. Let's look at what that basis is. First, the serious nature of Mr. Natawa's motorcycle accident. September 5, 2005, he suffered, he was involved in an accident. He suffered fractures to his right femur, tibia, fibula. He suffered knee injuries, heartburns, at least that he didn't need to explain. He went back to work in January 2006. When we look at that record, he went back to work with a non-properly functioning vehicle. There's simply no issue with that. And how do we know that? Look at the record here in the therapy rules, which are really telling in this case. And I think the arbitrator relied pretty heavily on it. February 17, 2006, Mr. Natawa's in therapy. He complained of right knee pain, imbalance. And the therapist indicates, I'm working with Joseph Natawa to eliminate work limitations, to eliminate the limitations that he has related to his work. One month later, he goes back. March 27, 2006, complains of limitations in the right knee, limitations with running, limitations with work activities that result in soreness of his knee, complains of pain with twisting and running. The therapist knows, we are still attempting to eliminate work-related limitations. April 27, 2006, another month later, there's more complaints of soreness in his knee. Then the rhetoric is dialed up. February 2, 2006, he goes back to his surgeon, Dr. Lewis. Dr. Lewis notes, gave the record, and that is record page 727. The patient has complained of instability in his knee. He does a test. And in the note, Dr. Lewis notes, there's an indication of PCL rupture. This is May 2, 2006. Mr. Natawa complains, I can't trust my knee when running after a suspect. Goes back August 18, 2006, to Dr. Lewis. Record page 725. The knee is quite bothersome. It's clinically unstable. Dr. Lewis now refers him to Dr. Chetik. A month before the fall down at work, refers him to Dr. Chetik for evaluation and consideration of PCL reconstruction. Now, he doesn't make it to Dr. Chetik, doesn't make the appointment with Dr. Chetik prior to the time of the fall down at work, September 13, 2006. Let's talk a little bit about Dr. Bach. Counselor, before you go any further on that, so you are saying that Dr. Bach unequivocally expressed his opinion that the claimant's 2005 motorcycle accident and the resulting knee instability were in no way aggravated by the 2006 work injury? Yes, that's clearly stated in his testimony. Dr. Bach is a very well-known, accomplished orthopedic surgeon. In the record, it's indicated he is the head of sports medicine at Rush University Hospital. Very, very credible, excellent surgeon. And he states without any equivocation. Has the claimant ever gone back to work? He has not. Well, he was working before the accident, wasn't he? He has not. So how do you explain that? Well, first of all, I don't think that's part of this particular case. It relates to another matter, but there are a lot of theories. And when Dr. Bach says, I don't know, there are theories that Dr. Bach talked about people making it back with PCL injuries. He made it back the first time, didn't he? He made it back with that, as I stated in the record. It's clear that was not a knee that was stable. It was not a knee that really probably should have allowed him to go back. We have in this record, without any doubt, a basis that this knee was injured prior to September 13, 2006. It is there. It is there in an overwhelming fashion. Dr. Bach states that the injury preexisted, and he states, as you just asked, it was not exacerbated by the September 13, 2006 incident. One thing I ask you to look at is this. PCL surgery does not occur until June 2007. It didn't, you know, the menisectomy, as we heard about, occurred October 30, 2006. If that PCL was further injured or aggravated, such that it was unstable and in a more serious degree, why is there a delay? Dr. Chuck waited until June of 2007 to do that surgery. Now, you'll see in the record, both doctors say, we don't like to do PCL surgeries. PCL surgeries are not like ACL surgeries. They're generally not very successful. We try to treat that injury with conservative measures. Conservative measures were being used back, you know, since prior to the fall of Mr. Mattel's suffering. But when we got to May and then August, Dr. Lewis, the surgeon, had determined it's not working. We're going to have to look at doing that surgery, the PCL surgery. He never made that appointment. Now, what you heard is another theory. You heard another theory from the clinic. Even if another theory, in accordance with CISRO, in many cases in this area, even if another theory or conclusion is reasonable, this court should not substitute its judgment where record evidence exists to support the finding of a commission in this case. Because there are facts that do, in fact, support the finding of the commission that the PCL injury preexisted and was not aggravated by the murder-related incident. The bill is no longer to ask that this court affirm the trial court's findings. Thank you. Mr. Butler. I waited four years plus to hear an answer. I still haven't heard an answer in the oral argument today. Why this man could work on September 13, 2006 as a do-bag officer in a physically demanding capacity and could not after this injury. Did you read the arbitrator's decision? I did, and it does not explain that answer either. It does not provide that answer either, Your Honor. Again, the reason is the evidence is not there. Dr. Bach has no answer to that. The motorcycle accident didn't contribute anything. Well, I mean, that simply defies logic and reason. The man couldn't walk after this injury. After what injury? After September 13, 2006, he could not walk from the scene. Dr. Chudik explained that his knee was blown up like a balloon so badly that the MRI that was initially taken was non-diagnostic and had to wait to do another one later. There's no context that the municipal cares occurred as a result of this injury. The fact that a petitioner such as Mr. McCullough is able to work on one day and then sustains an injury and is able to work after that by itself and sustain a burden, there's plenty of case law saying that that by itself will sustain the case. Here there's much more than that. How does the PCL injury dating from 2005 become disabling after September 13, 2006 if there's nothing else that's involved, and we know that there is damage to the municipal cares undisputed and that these have a secondary stabilization role? It's impossible to think that the overall condition of this knee was not adversely affected where the man by undisputed acts could not work afterwards. Also, I acknowledge that Mr. Carollo agreed about that municipal cares at MMI, that Dr. Bach said that. That's the theory, that they were at MMI, not that they were totally asymptomatic. Another thing that I think is important on this issue about whether there's any substance opinion to support the respondent's case. Bear in mind, Dr. Bach's deposition proceeded before Dr. Chuttick's, and Dr. Bach's deposition proceeded before the PCL repair was done by Dr. Chuttick. Only Dr. Chuttick was able to testify after the PCL was repaired and Mr. McCullough remained stable, and that was a vital piece of information because, again, as I said, the PCL is now improved following a reconstruction. That means the PCL should be in better condition than it was back in 2005 and up to 2006 at the date of this injury. And yet, Mr. McCullough can't go back to work. There is no opinion in this record that he can go back to work. It betrays the fact that something there with those who misguide is a reason why the man can't go back to work. Any other result in this court literally defines that as a reason. So there again, you come to does the respondent have an actual basis and evidence here? Only Dr. Chuttick knows what happened after surgery. Only Dr. Chuttick has issued opinions addressing that situation about the PCL being reconstructed and the man still can't work. Dr. Mark doesn't have anything to say about that topic. Thank you, Counselor. Thank you. Time is up. The court will take the matter under advisement for disposition.